**CONTINENTAL WAX CORPORATION,** a corporation, and Lee Hall, Herbert Heller and Jack Heller, individually and as officers of said corporation, Petitioners,

v.

**FEDERAL TRADE COMMISSION,** Respondent.

No. 249, Docket 28259.

United States Court of Appeals Second Circuit.

Argued Jan. 31, 1964.

Decided April 16, 1964.

476

Bass & Friend, New York City (Milton A. Bass, New York City, of counsel), for petitioners.

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Harold A. Kennedy, Richard Whittington Whitlock, Attys., Federal Trade Commission, for respondent.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

Petitioners, the Continental Wax Corporation and three of its officers, were found by the Federal Trade Commission to have violated Section 5(a) (1) of the Federal Trade Commission Act, 15

U.S.C. § 45(a) (1), by having in a misleading fashion falsely represented the performance characteristics of a liquid household floor wax which they produce and market. More specifically, the Commission found that petitioners had falsely represented in their advertising and in printed statements on their product that their floor wax, sold under the trade name of "Continental Six Month Floor Wax," [1] would last as an effective home floor covering for a period of six months. The final order issued by the Commission required that petitioners cease and desist from representing that their floor wax would last for six months, or for any other definite period of time, in excess of the period for which their wax was effective, and prohibited them from designating or describing their product by the term "six months" or any other term denoting a definite period in excess of their wax's effective life.

Petitioners have applied to this court for a review of the decision and order of the Commission, claiming that the Commission erred by: (1) making findings which were contrary to the evidence; (2) fashioning an order which covered petitioners' trade name although the complaint issued against petitioners did not place in issue the legitimacy of that name; and (3) enjoining petitioners from using their trade name instead of permitting the name to be retained but ordering it qualified by appropriate language. Despite these claims of error our review of the record of the proceedings below convinces us that the Commission's decision and order should be upheld without any modification.

■ In contesting the sufficiency of the evidence underlying the Commission's decision, petitioners have not effectively disputed the Commission's determination of the proper meaning to be accorded their advertising, but have chosen to ground their argument almost exclusively on a claim that the evidence

1. Although petitioners' product was also known as "Continental-Grip Kote," the record indicates that petitioners' advertising was almost exclusively directed toward marketing the product under the trade name "Continental Six Month Floor Wax."

failed to establish the inability of their wax to perform as advertised. In deciding what representations were conveyed by petitioners' advertising statements the Commission was, of course, making a finding of fact, Kalwajtys v. F. T. C., 237 F.2d 654, 656, 65 A.L.R.2d 220 (7 Cir. 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597 (1957), and that finding, like any other factual determination by the Commission, is to be regarded as conclusive if supported by substantial evidence upon the record considered as a whole. Federal Trade Commission Act, § 5(c), 15 U.S.C. § 45(c). Moreover, the Commission in interpreting advertisements may properly consider the over-all impression those advertisements make on the public, Country Tweeds, Inc. v. F. T. C., 326 F.2d 144, 148 (2 Cir. 1964); Murray Space Shoe Corp. v. F. T. C., 304 F.2d 270 (2 Cir. 1962), and may construe against the advertiser statements susceptible of both a misleading and a truthful interpretation. United States v. Ninety-Five Barrels of Vinegar, etc., 265 U.S. 438, 443, 44 S.Ct. 529, 68 L.Ed. 1094 (1924); Country Tweeds, Inc. v. F. T. C., supra, 326 F.2d at 148; Murray Space Shoe Corp. v. F. T. C., supra, 304 F.2d at 272.

■ The Commission concluded that petitioners' advertising statements, as understood by the consuming public, embraced more than a claim that some of petitioners' wax would be left sticking to a floor at the end of a six month period, and that they conveyed the impression that petitioners' product would last and be effective for six months for all of the purposes for which floor wax is ordinarily used by the consumer, "including scuff, dirt, and wear resistance; beauty; appearance; gloss; and protection." We agree that this was a fair appraisal of the proper meaning to be attached to petitioners' advertisements. A trusting housewife who is told that she will not have to reapply a waxing product for half a year is entitled to conclude not only that the product will cover her floor with a film of wax for six months, but also that during that period she will not have to remove and replace that film because it has become so dirty, dull and scuffed as to be unsightly.

As to the quality of petitioners' product, the record as a whole more than amply supports the Commission's conclusion that Six Month Floor Wax is incapable of measuring up to the representations which petitioners have used in marketing it. Evidence in support of the complaint consisted of the results of numerous tests to which petitioners' wax product had been subjected. We need not detail all of the test reports here, since the Commission reviewed and summarized them below. Suffice it to say that the tests ranged from those tests designed to elicit a subjective impression of the wax's wearing properties from housewives and other persons experienced in evaluating floor coverings, to those tests calculated to measure accurately the rate at which petitioners' wax would wear off a trod-upon floor through periodically subjecting to geiger counter checks a test floor which had been waxed with a sample of petitioners' product that had been impregnated with a radioactive agent. The results of all of these tests pointed unmistakably to the conclusion that petitioners' wax would not last and would not be effective for a period of six months.

While petitioners express no serious quarrel with the conclusions the Commission has drawn from most of the test reports, and indeed admit in their brief that they do not claim "the same appearance for a floor after two or three months of wear," petitioners do maintain that one of the radioactive isotope tests noted above indicated that their floor wax would at least provide "protection" for six months. Even if we were convinced, contrary to the view which we have already expressed, that the single element of protection can be sensibly separated from that of appearance in evaluating the lasting properties of a floor wax, we are unable to agree with petitioners that the Commission's findings on this issue lacked substantial evidentiary support.

Petitioners strongly rely upon the results of a test conducted at petitioners' request and expense by an independent testing laboratory, which results were introduced in evidence by both complaining counsel and petitioners. In conducting the test, the testing company waxed an area of a test floor with a sample of petitioners' floor wax impregnated with radioactive Carbon 14, and the test floor was then subjected to a traffic density of about 6,000 passes per week. By taking periodic geiger counter checks of the floor and noting drops in the level of radioactivity, the conductors of the test were able to determine the rate at which the radioactive wax was wearing off the floor. The official test report indicated that after a five week period, during which the test floor was subjected to a total of 40,000 passes,[2] the test was discontinued because the radioactive count for the floor was reaching the normal background level. The president of the testing laboratory testified that this meant that at the end of the five week period and after the 40,000 passes more than 96 per cent of the wax had been worn away.[3] Though this witness also stated that the floor, during these five weeks, had been subjected to the equivalent of six months' to one year's normal home wear, we think that the Commission could properly reject his testimony as being contradicted by the actual figures in the official test report which the witness himself had certified. The report estimated normal floor traffic in an average home at about 600 passes per day, an estimate which indicates that a total of 40,000 passes would be equal to 66 days of normal home wear. Since 96 per cent of petitioners' wax had worn off the test floor after 40,000 passes, the Commission could reasonably conclude that, appearance aside, this test demonstrated that petitioners' wax would not even perform the separate task of protection for a six months' period, particularly in view of the corroboration provided by results of a second radioactive isotope test in which 43 per cent of petitioners' wax had worn away after only 5,000 walk-overs.

■ Turning now to petitioners' objections to the breadth of the Commission's order, we first deal with their claim that the complaint did not adequately serve as notice to them that the Commission might issue an order dealing with their trade name. We think that, while the complaint could have been drafted so as to present the trade name issue more pointedly, nevertheless it quite adequately apprised petitioners of

2. As the Commission noted below, the official test report was internally inconsistent, in that one section of it reported subjecting the test floor to 6,000 passes per week for five weeks (a total of 30,000 passes), while another section contained a statement that the floor had been subjected to a total of 40,000 passes. We have used the latter figure, more favorable to petitioners, in our discussion of this test.

3. The final paragraph of the test conclusions stated that the wax coating then remaining on the floor would be left there for an additional five months for further observation. The coating was removed, however, after only one additional month, during which time the test floor had been subjected to 26,000 additional passes (approximately 43 additional days of home wear). Though a supplemental report indicated that the floor showed a satisfactory luster when buffed with a commercial machine, there were several reasons for placing little stock in the supplemental report. First, petitioners' advertising did not indicate to a potential buyer that buffing with a commercial machine was a necessary step in getting six months of wear out of Six Month Floor Wax, nor is it reasonable to assume that the average housewife would have such a machine handy. Second, with 96 per cent of petitioners' wax gone from the test floor after the first five weeks, one might properly wonder whether machine buffing at the end of an additional month's testing was producing a shine on a coating of wax or on the floor itself. Finally, if the supplementary testing was helpful at all to petitioners it was on the issue of their wax's appearance after a period of wear, rather than its plain resistance to wearing away, and in this respect the results were completely rebutted by the various other test reports introduced in evidence before the Commission.

an objection to their trade name and resulted in no fatal variance between the complaint and the proof and findings. See Country Tweeds, Inc. v. F. T. C., supra; Standard Distributors, Inc. v. F. T. C., 211 F.2d 7 (2 Cir. 1954). Paragraph four of both the initial and amended complaints, in detailing the allegedly deceptive statements which petitioners had printed on the product, included the words "SIX MONTH FLOOR WAX." Moreover, the entire thrust of the complaint was that petitioners had represented to the public that their wax product would do what its name implied it would do, namely, last six months; and it strains credulity to believe that petitioners were caught unawares when the Commission considered the possible deceptiveness contained within their trade name.

■■ Quite apart from the question whether this issue was properly before the Commission, petitioners also claim that the Commission abused its discretion in requiring them to delete the words "six months" from the name of their product. While we agree with petitioners that this is indeed strong medicine, the effect of which is to force the abandonment of a valuable trade name backed by considerable expenditures of money and effort, we cannot agree that the imposition of this remedy, strong as it is, is so harsh under the circumstances of this case as to amount to an abuse of discretion by the Commission. The Commission has wide latitude in its choice of remedies it considers sufficient to cope with the violators which it discovers, and our power of review under Section 5(c) of the Act is limited to making certain that there is some reasonable relation between the remedy selected and the unlawful practices found to exist. Jacob Siegel Co. v. F. T. C., 327 U.S. 608, 613, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946); Country Tweeds, Inc. v. F. T. C.,

supra, 326 F.2d at 148–149.[4] Within the framework of this general doctrine of judicial review of Commission orders, there have been developed specific rules for passing upon the propriety of a decision by the Commission to impose the stern remedy of trade name excision. We find that under the circumstances of the present case these rules require that we uphold, rather than modify, the Commission's choice of this remedy.

■ The Commission, adhering to the requirement imposed upon it by the Supreme Court in Jacob Siegel Co. v. F. T. C., supra, 327 U.S. at 612–613, 66 S.Ct. at 760–761, 90 L.Ed. 888, duly considered the possibility of not destroying petitioner's trade name through the use of qualifying words designed to cure the deception it found to be implicit in the name. It was the Commission's determination, however, that such a remedy would not be feasible in this case; and with that determination we agree. True, the use of qualifying language may often suffice to render harmless an otherwise deceptive trade name, but the effectiveness of qualifying language is usually limited to situations where the deception sought to be eliminated is created by an ambiguity in the trade name which permits a misleading inference to be drawn favorable to the trade-named product. In such a situation the deception can be conveniently cured by the sensible addition of qualifying words calculated to resolve this ambiguity and thus prevent the misleading interpretation which the trade name would otherwise permit. Elliot Knitwear, Inc. v. F. T. C., 266 F.2d 787 (2 Cir. 1959); Country Tweeds, Inc., 50 F.T.C. 470 (1953); Jacob Siegel Co., 43 F.T.C. 256 (1946) (upon remand from Supreme Court in Jacob Siegel Co. v. F. T. C., supra). Where, as here, however, the offending deception is caused by a clear and unambiguous false repre-

4. While in Country Tweeds, Inc. v. F. T. C. we recently had occasion to modify a Commission order which was framed in broad and sweeping terms and which went far beyond the deceptive practices there found to exist, we have no such problem in this case. The order here, though a strong one, is framed in specific terms and relates to the particular deceptive practices in which the Commission found petitioners to have been engaged.

sentation implicit in the product's name, and, because of this, the addition of a qualifying phrase denying the truth of that representation would lead to a confusing contradiction in terms, no remedy short of complete excision of the trade name will suffice. F. T. C. v. Algoma Lumber Co., 291 U.S. 67, 81–82, 54 S.Ct. 315,·78 L.Ed. 655 (1934) (deceptiveness in use of name "White pine" to describe yellow pine held properly cured only by complete excision); Gold Tone Studios, Inc. v. F. T. C., 183 F.2d 257 (2 Cir. 1950), 183 F.2d 257 (2 Cir. 1950) (complete excision of name "Gold Tone Studios" upheld where studio did not employ gold tone photographic processing); see Elliot Knitwear, Inc. v. F. T. C., supra, 266 F.2d at 790–791. To employ the remedy of qualifying language in this case would produce the confusing result of having petitioners' labels read, in substance, "Six Month Floor Wax—Will not last and be effective for six months." Instead of curing deception by replacing an ambiguity with a clear true statement, thereby rendering effective the remedy of qualification, the use of qualifying language here would serve only to replace a clear false statement with ambiguity. It hardly seems necessary for us to comment at this point that we do not think that the Commission abused its discretion in preferring to prescribe a remedy better calculated to eliminate completely the deception which it found being practiced.

Though petitioners remind us that to uphold the remedy of excision will take from them a valuable business asset in which they have made a considerable investment, this reminder causes us to muster little sympathy for them. They were found by the Commission to have used their trade name, in conjunction with various other advertising statements, to mislead and deceive the buying public as to the true performance characteristics of their product. Whatever value their trade name has come to acquire has therefore been due, in substantial measure, to its effectiveness as a vehicle for misrepresentation; and what-

ever investment petitioners have made in that trade name has been hedged, in part, by the inducement of members of the public to purchase the product named under the mistaken belief that it will do that which it will not. Therefore, we do not consider it unfair to require petitioners to give up whatever valuable property right is represented by their trade name, and to force them to forego, for the public's protection, whatever benefits might be realized through continued use of that name in the future.

The petition to review and set aside the order is denied, the FTC order is affirmed, and an order shall issue as provided for in the Federal Trade Commission Act, sec. 5(c), 15 U.S.C.A. § 45(c), and Rule 13(*l*) of this Court, 28 U.S.C.A.