WILLIAM H. RORER, INC., Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 225, Docket 30650.

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1967.

Decided March 20, 1967.

Harry L. Shniderman, Washington, D. C. (Alan G. Kirk, II, Fort Washington, Pa., Covington & Burling, Robert J. Muth, Washington, D. C., on the brief), for petitioner.

Daniel H. Hanscom, Washington, D. C. (James McI. Henderson, Gen. Counsel; J. B. Truly, Assistant Gen. Counsel, on the brief), for respondent.

Before LUMBARD, Chief Judge, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge.

William H. Rorer, Inc., a manufacturer of pharmaceutical products, petitions for review of an order [1] of the Federal Trade Commission enjoining Rorer from violating the price discrimination provisions of section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). Rorer's illegal discrimination consisted of giving a greater discount on certain products to "chain" drugstores as compared with independent drugstores. Rorer does not here challenge the Commission's conclusion that its policy violated the law. Rather, it limits its petition to an attack on the Commission's order. That order, reproduced in relevant part below,[2] has three

---

1. Unofficially reported in 3 Trade Reg. Rep. ¶17,535 (May 9, 1966).

2. IT IS ORDERED that respondent William H. Rorer, Inc., a corporation, and its officers, representatives, agents and employees, directly, indirectly, or through any corporate or other device, in or in connection with the sale of prescription and nonprescription pharmaceutical products in commerce, as "commerce" is defined in the amended Clayton Act, do forthwith cease and desist from discriminating, directly or indirectly, in the price of such products of like grade and quality by selling to some purchasers at prices higher than the price charged to any other purchaser who, in fact, competes in the resale and distribution of respondent's products with the purchaser paying the higher prices.

IT IS FURTHER ORDERED that, in addition to and apart from the provisions of the preceding paragraph, if respondent at any time after the effective date of this order institutes a price schedule whereby it charges a different price for its products to any person, group or class of its competing customers on the basis or in the belief that such difference in price

elements: (1) It prohibits price discrimination among all purchasers of Rorer's pharmaceutical products of like grade and quality who compete in their resale and distribution; in addition, if Rorer does set up a price differential between competing purchasers based upon a claimed cost saving, the order requires Rorer (2) to notify the Commission promptly and submit price schedules and data in support of the claimed cost saving; and (3) to publicize to all customers that its prices to some are higher than to others, together with reasons and details. We modify the order in one substantial respect, and, as modified, grant enforcement.

The Commission's view of the facts in this case was that Rorer committed a basic violation of the Robinson-Patman Act during the period 1955–1963. In those years, Rorer granted retail drugstore chains a twenty per cent discount on its products (the same discount afforded to Rorer's wholesale customers) while independent retail drugstores received discounts of only fifteen per cent. To qualify as a "chain," the purchaser was simply required to have five or more pharmacies under a single ownership, a buying office and a warehouse. One of the five pharmacies could be regarded as the office and warehouse. Rorer attempted to justify the additional chain discount by showing that the five per cent price reduction saved Rorer the expense of warehousing and redistributing the drugs. But the Commission concluded that the discount to chains was not rationally related to any "warehousing" cost reduction to Rorer and rejected this attempted justification. It pointed out that no minimum order was required to entitle the chain to the discount, nor did the chain have to show that the discounted drugs were being distributed to other pharmacies in the chain. The chief product on which the discount was granted was a nonprescription antacid, Maalox. In 1962, when Maalox was being used as a loss leader by retail stores, Rorer's net sales amounted to about $20 million and sales of Maalox accounted for seventy-five per cent of that volume. The administrative proceedings were extensive and protracted,[3] and raised a number of other issues not relitigated here.[4]

Petitioner first challenges the scope of the order; it points out that in contrast to the illegal activity found—a single type of discount arrangement offered only to Rorer's retail chain customers—the order enjoins all forms of price discrimination covered by section 2(a) of the Act among all of Rorer's customers. Rorer reasons that although the broad gauge order approved in FTC v. Ruberoid Co., 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081 (1952), may once have been proper in almost all cases, the passage of the Finality Act of 1959, 15 U.S.C. § 21, has made it imperative since then that the Commission more carefully tailor its orders initially to the misconduct found.

is justified by savings to the respondent in the cost of manufacture, sale or delivery to the members of such customer group or class, respondent shall

(a) promptly notify the Federal Trade Commission of the institution of such price schedules and submit to the Commission a written statement with necessary underlying data in support of the cost justification of such price discrimination; and

(b) adequately and regularly publicize to all customers that prices to some are higher than to others, together with reasons and details of the price differences or discounts.

3. The Commission's proposed complaint was issued in July 1963, and the formal complaint in September. In March 1964, Rorer brought suit in the United States District Court for the District of Columbia to have the hearings enjoined, but two months later the suit was dismissed. William H. Rorer, Inc. v. Federal Trade Commission, Civ. No. 644–64 D.D.C., May 13, 1964. Hearings were held in three cities and concluded in October 1964. The hearing examiner rendered his initial decision in June 1965, and the Commission issued its decision in May 1966. There were almost 1,000 exhibits introduced, 280 for the Commission and 660 by Rorer.

4. E. g., whether the 5% price differential was significant, and had caused or was likely to cause injury to competition.

In the past, no sanction attached to a violation of an order until after the party enjoined had received additional opportunity for review of its scope. See FTC v. Jantzen, Inc., 386 U.S. 228, 87 S.Ct. 998, 18 L.Ed.2d 11 (1967). Now, disobedience of this order, if enforced, is at petitioner's peril, and sanctions up to $5,000 per day may be imposed. Therefore, Rorer claims that the order in this case is unjustifiably broad in banning it, on pain of heavy penalty, from varieties of price discrimination altogether different from the "warehousing" discount to chains. Petitioner primarily argues that the Commission should have accepted the Initial Order of the Hearing Examiner, which in this respect only prohibited Rorer from *classifying* retail chain and independent drugstores differently for pricing purposes. If that position is not accepted, Rorer suggests that at least there should be excluded from the order sales to non-retail customers.

■ It is certainly true that "the severity of possible penalties prescribed by the amendments for violations of orders which have become final underlines the necessity for fashioning orders which are, at the outset, sufficiently clear and precise to avoid raising serious questions as to their meaning and application." FTC v. Henry Broch & Co., 368 U.S. 360, 367–368, 82 S.Ct. 431, 436, 7 L.Ed.2d 353 (1962) (dictum). To refer only to cases within our own circuit limiting Commission orders in appropriate circumstances, see Country Tweeds, Inc. v. FTC, 326 F.2d 144, 148–149 (1964); R. H. Macy & Co. v. FTC, 326 F.2d 445, 450 (1964); Grand Union Co. v. FTC, 300 F.2d 92, 100–101 (1962); American News Co. v. FTC, 300 F.2d 104, 111, cert. denied, 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed. 2d 64 (1962); Swanee Paper Corp. v. FTC, 291 F.2d 833, 837–838 (1961), cert. denied, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962). In other circuits, see, e. g., Fred Meyer, Inc. v. FTC, 359 F.2d 351, 368–370 (9th Cir. 1966), cert.

denied, 386 U.S. 907, 87 S.Ct. 853, 17 L.Ed.2d 781 (U.S. Feb. 13, 1967); Joseph A. Kaplan & Sons, Inc. v. FTC, 121 U.S.App.D.C. 1, 347 F.2d 785, 789–791 (1965); Korber Hats, Inc. v. FTC, 311 F.2d 358, 362–364 (1st Cir. 1962). Accordingly, the power—indeed, the duty —to scrutinize Commission orders with care is clear. However, the Commission suggests that if it had entered an order forbidding only separate classification for pricing purposes of chains and independent drugstores, Rorer, having lost its battle, would have won the war. The *Commission* points out that under Rorer's proposed order, so long as chains and independents were not put in different classes, Rorer would be free to discriminate in any way in favor of individual chain customers without violating the order.

■ Taking all the facts into consideration, we think the Commission has the better of this argument. The Commission's findings, supported by substantial evidence, were that for eight years Rorer engaged in a scheme which by 1962 discriminated in favor of 230 chains and against 10,000 to 11,000 independent drugstores, and that Rorer concealed its discriminatory practice from the injured group.[5] And there is no doubt that the millions of dollars of products sold by Rorer in markets across the United States pursuant to its discriminatory scheme, in the context of the very keen competition among its retail customers, constituted a serious and extensive violation. Nor did this violation involve "an uncertain area of the law," *Swanee Paper,* 291 F.2d at 838, or a "novel application" of the Act, *Grand Union,* 300 F.2d at 100. It was indeed a classic price discrimination in favor of the chains as against individual retailers, a principal reason for and target of the Robinson-Patman Act.[6] Rorer presses upon us other considerations; e. g., it discontinued its violation before the Commission filed its complaint and it

---

5. Petitioner attacks this finding as clearly erroneous, but we hold that it was supported by substantial evidence.

6. FTC v. Henry Broch & Co., 363 U.S. 166, 168–169, 80 S.Ct. 1158, 4 L.Ed.2d 1124 (1960).

pledged to the Commission that it would not reinstitute the proscribed practice. *Country Tweeds*, 326 F.2d at 149; *R. H. Macy*, 326 F.2d at 450; see *Grand Union*, 300 F.2d at 100. But the Commission specifically took these factors into account and as to the former pointed out that when Rorer stopped its discriminatory practice, it was aware that its policy was under Commission scrutiny. See *Coro, Inc. v. FTC*, 338 F.2d 149, 153 (1st Cir. 1964), cert. denied, 380 U.S. 954, 85 S.Ct. 1088, 13 L.Ed.2d 971 (1965). Rorer also emphasizes that it has no prior record of any antitrust violation, a consideration that is relevant but hardly controlling. In view of the disclosed magnitude, duration and clear illegality of Rorer's preference for retail chain customers, we cannot say that the Commission's fear that Rorer might be tempted to engage in other types of section 2(a) violations is unreasonable. Therefore, while we will not mechanically approve broad 2(a) orders—and indeed suggest that careful fashioning of the orders best serves the legitimate interests of all concerned—we conclude that, on these facts, Rorer's first contention is unjustified. *Atlantic Ref. Co. v. FTC*, 381 U.S. 357, 376–377, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 392–395, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).

■ On the other hand, Rorer's fall-back position on the scope of the order seems sound, i. e., that it should cover only retail practices. The price discrimination Rorer has been found to engage in affected only Rorer's retail drugstore customers; there was no showing that Rorer might be disposed to discriminate in the prices it charges its other types of customers—wholesalers, industrial plants, hospitals, nursing homes, federal, state and municipal agencies. Discrim-

ination among *all* customers was "neither found to have been pursued nor persuasively to be related to the proven unlawful conduct" toward *retail* drugstores. *NLRB v. Express Publishing Co.*, 312 U.S. 426, 433, 61 S.Ct. 693, 698, 85 L.Ed. 930 (1941); see *Henry Broch*, 368 U.S. at 366, 80 S.Ct. 1158. Indeed, portions of the Commission's own written opinion support this contention of Rorer.[7] We conclude that the application of the order to all customers was an abuse of discretion, and that it should cover only retail drugstore customers.

■ The remaining objections to the order do not require prolonged discussion, as indeed the parties recognized in their briefs. The requirement that the Commission be notified promptly of any price differential between competing customers that Rorer may set up in the future based upon claimed cost savings should also be limited to retail drugstore customers. Rorer suggests that the order compels advance notification to the Commission; we see no requirement beyond prompt notice following institution of a differential price schedule.[8] Nor do we think that Rorer's initial submission of cost justification information would foreclose it from supplying additional, later data in defense to a Commission proceeding. In the context of this case, in which a cost justification was found to be unwarranted, placing this affirmative duty upon Rorer will keep the Commission apprised of potential new problems related to Rorer's past conduct without further taxing the Commission's already strained resources. See also 16 C.F.R. § 3.26(a) (Supp. 1966); *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

■ Finally, we see no reason to eliminate that portion of the Commission's

7. For example, the Commission states: Respondent's customer classification was an arbitrary and thinly veiled scheme for favoring certain of its *retail* customers * * *. Consequently, a broad order which will halt all price discriminations between competing *retail* customers must be entered * * *. [Emphasis added.]

8. Cf. *American Motors Corp.*, 3 Trade Reg.Rep. ¶17,297 at 22,421 (FTC July 19, 1965), appeal pending 6th Cir., where the order apparently requires advance notice and Commission approval.

order requiring Rorer to publicize future price differentials to its customers together with reasons and details for these differences. Again we limit the order to retail drugstore customers. Nondisclosure of the "warehousing" discount foreclosed complaints from the thousands of customers it injured by keeping them ignorant of its existence. Thus, publicity in the future is tailored to prevent recurrence of past conduct which abetted illegal discrimination. Nor do we think that the requirement that Rorer furnish "reasons and details" of the price differences is fatally vague. "Details" we take to mean actual prices and the conditions under which they may be obtained. "Reasons" we understand to signify very brief nontechnical explanations of the claimed cost-justification.

■ Some final observations are appropriate. Our approval of the two disclosure provisions in the order is confined to the facts of this case; such requirements might not be justified where the discrimination proven was either less clearly a violation, less significant, of shorter duration, or not concealed. To be sure, the Commission has been given wide discretion to choose a remedy, Jacob Siegel Co. v. FTC, 327 U.S. 608, 611, 66 S.Ct. 758, 90 L.Ed. 888 (1946), and to conform that remedy to the facts of the case before it. But common sense suggests that this justification of novel provisions of Commission orders is enhanced if the Commission takes equal pains to make the ordinary cease-and-desist provision adequately specific. It is incumbent upon the Commission to shape all provisions of its orders realistically to the violation it has found; the cases cited above and the somewhat overbroad order reviewed here indicate it does not always do so.

The Commission's order as modified may be enforced.[9] The Commission shall within ten days submit a proposed en-

forcement decree conforming to this opinion, and Rorer may object to this proposed decree by filing a counterproposal, pursuant to Rule 13(*l*) of this court, except that Rorer may have ten, instead of five, days for its submission. See *R. H. Macy*, 326 F.2d at 450.

---

9. Only on the last page of its brief has the Commission made a cross-application for enforcement of its order pursuant to 15 U.S.C. § 21(c). We hold this application to be legally sufficient, but in the future the Commission should follow the orderly procedure for such an application set forth in our rules. Rule 13(e), Rules of the United States Court of Appeals for the Second Circuit.