## FEDERAL TRADE COMMISSION *v.* HENRY BROCH & CO.

No. 74.   Argued November 16, 1961.—Decided January 15, 1962.

*Solicitor General Cox* argued the cause for petitioner. With him on the briefs were *Assistant Attorney General Loevinger, Daniel M. Friedman, Richard A. Solomon, Irwin A. Seibel, Charles H. Weston, James McI. Henderson, PGad B. Morehouse* and *Alan B. Hobbes.*

*Frederick M. Rowe* argued the cause for respondent. With him on the briefs were *Joseph DuCoeur* and *Harold Orlinsky.*

Mr. Justice Brennan delivered the opinion of the Court.

The Federal Trade Commission seeks reversal of the action of the Court of Appeals for the Seventh Circuit in modifying the cease-and-desist order which the Commission had issued against the respondent Broch on finding that Broch violated § 2 (c) of the Clayton Act.[1]   285 F. 2d 764.   The action of the Court of Appeals was *sua sponte,* and was taken in proceedings on remand which followed our reversal of that Court's earlier action setting aside the order in its entirety because Broch's conduct was thought not to violate § 2 (c).[2]   *Federal Trade Comm'n v. Broch & Co.,* 363 U. S. 166, reversing 261 F. 2d 725. We granted certiorari, 366 U. S. 923.

Broch is a broker selling food products on commission for some 25 seller principals.   One of his principals is

---

[1] Section 2 (c) as amended by the Robinson-Patman Act, 49 Stat. 1527, 15 U. S. C. § 13 (c), is as follows:

"(c) Payment or acceptance of commission, brokerage or other compensation.

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

[2] Following the remand Broch filed a motion which sought, *inter alia,* a modification of the order on the ground of its allegedly "unduly broad scope."   In opposing the motion the Commission claimed that Broch had not objected to the scope of the order in the proceedings before the Commission or in the original review proceedings, and was therefore not entitled to have the Court entertain the motion. Broch's motion was denied but the order embodying the denial also included the provision questioned here amending the order "On the Court's own motion."

Canada Foods, Ltd., a processor of apple concentrate. The Commission found that Broch, to make possible Canada Foods' acceptance of an offer from J. M. Smucker Co. to buy an unusually large quantity of apple concentrate at less than Canada Foods' established price, reduced to 3%, for this sale, the agreed 5% rate of commission ordinarily payable by Canada Foods to Broch.[3] The Commission adjudged, and in our prior opinion we agreed, that this action of Broch was, in the circumstances, a violation of § 2 (c).

The Commission's order was not confined to restraints against repetition of the precise violation of § 2 (c) which Broch was found to have committed, nor was the application of the order limited to future sales from Canada Foods to Smucker.[4] Paragraph (1) did prohibit the

---

[3] There was evidence in the proceedings before the Commission that, following the transaction described above, Broch continued to sell apple concentrate to Smucker on behalf of Canada Foods at a reduced price and to receive a reduced commission of 3% on such sales.

[4] The Commission's order was as follows:

"*It is ordered* That respondents Henry Broch and Oscar Adler, copartners trading as Henry Broch & Co., their representatives, agents, or employees, directly or through any corporate or other device, in connection with the sale of food or food products for Canada Foods Ltd., or any other seller principal, in commerce, as 'commerce' is defined in the Clayton Act, as amended, do forthwith cease and desist from:

"(1) Paying, granting or allowing, directly or indirectly, to The J. M. Smucker Co., or to any other buyer, or to anyone acting for or in behalf of or who is subject to the direct or indirect control of such buyer, any allowance or discount in lieu of brokerage, or any part or percentage thereof, by selling any food or food products to such buyer at prices reflecting a reduction from the prices at which sales of such foods are currently being effected by respondents for Canada Foods Ltd. or any other seller principal, as the case may be, where such reduction in price is accompanied by a reduction in the regular rate of commission, brokerage or other compensation cur-

repetition of the particular violation which Broch committed, but in connection with sales for Canada Foods, or for "any other seller principal," to Smucker, or "to any other buyer." Paragraph (2) also extended its prohibitions to sales from all seller principals to all buyers, but went beyond paragraph (1) to prohibit Broch from "In any other manner . . . directly or indirectly" paying, granting or allowing, in the words of § 2 (c), "anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof . . . ." The Court of Appeals excised from the order all references to "any other seller principal" and to "any other buyer," thus limiting the order's application to future sales from Canada Foods to Smucker.

The Commission renews here the argument it made in the Court of Appeals that judicial modification of the order was precluded because Broch failed to object to the scope of the order before the Commission. Broch disputes that he failed to register a proper objection before the Commission. We see no reason to determine the fact. We will assume, without deciding, that the Court of Appeals properly passed upon the scope of the order. We nevertheless think that in the circumstances of this case the order should have been affirmed in the form entered by the Commission.

Broch supports the action of the Court of Appeals as to paragraph (1) of the order with the argument that,

---

rently being paid to respondents by such seller principal for brokerage services; or

  "(2) In any other manner, paying, granting or allowing, directly or indirectly, to The J. M. Smucker Co., or to any other buyer, or to anyone acting for or in behalf of or who is subject to the direct or indirect control of such buyer, anything of value as a commission, brokerage or other compensation or any allowance or discount in lieu thereof upon, or in connection with, any sale of food or food products to such buyer for its own account."

since the order was based only upon findings limited to an asserted illegal payment respecting a single sale from Canada Foods to Smucker, the Commission's ban was too sweeping in its application to sales from *all* seller principals to *all* buyers.   There is no merit in this argument. The Commission has a wide discretion to formulate a remedy adequate to prevent Broch's repetition of the violation he was found to have committed.   See *Jacob Siegel Co.* v. *Federal Trade Comm'n,* 327 U. S. 608, 611–612. We cannot say that the Commission exceeded its discretion in banning repetitions of Broch's violation in connection with transactions involving *any* seller and buyer, rather than simply forbidding recurrence of the transgression in sales between Canada and Smucker.   *Federal Trade Comm'n* v. *Cement Institute,* 333 U. S. 683, 728–729. Compare *United States* v. *United States Gypsum Co.,* 340 U. S. 76, 90.

Broch further argues that the Commission exceeded its discretion in the prohibitions embodied in paragraph (2). He did not cross-petition this Court for a writ of certiorari and does not here challenge paragraph (2) as modified by the Court of Appeals.   Had the only vice claimed in paragraph (2) been its extension to all seller principals and all buyers, the Court of Appeals' *sua sponte* amendment would for reasons already stated have been clearly erroneous.   But Broch contends that, before it was restricted to transactions involving Canada and Smucker, this part of the order was so broad as to jeopardize the conduct of his entire business, in that it unqualifiedly prohibited reductions of commissions coupled with lower prices—even uniform reductions, or reductions which are service- or cost-justified, or reductions for the purpose of meeting competition.

In considering Broch's challenge to paragraph (2) it is necessary to observe that the 1959 amendments to § 11 of the Clayton Act—which substitute for the Clayton Act

provisions for enforcement of administrative orders those in § 5 of the Federal Trade Commission Act—do not apply to enforcement of the instant order.[5] In consequence, Broch cannot be subjected to penalties except for violation of an enforcement order yet to be entered by an appropriate Court of Appeals, to be predicated upon a determination that some particular practice of Broch violated the Commission's order. Thus Broch is not, by virtue of that order, presently acting under the risk of incurring any penalty without further administrative and judicial consideration and interpretation, despite the fact that he has already received determination of his petition for review. *Federal Trade Comm'n* v. *Ruberoid Co.,* 343 U. S. 470, 477–480.[6]

[5] 38 Stat. 734, 15 U. S. C. § 21, as amended July 23, 1959, Pub. L. 86–107, 73 Stat. 243. The order herein was entered by the Commission on December 10, 1957. The procedures enacted by the 1959 amendments therefore do not apply to it. See *Sperry Rand Corp.* v. *Federal Trade Comm'n,* 110 U. S. App. D. C. 1, 288 F. 2d 403.

[6] The 1959 Amendments resulted from a congressional conclusion that the former § 11 procedures were too cumbersome to assure effective enforcement of agency orders. It was said in the House Committee Report accompanying the 1959 amendments:

"The Clayton Act, in its present enforcement procedures, permits a person to engage in the same illegal practices three times before effective legal penalties can be applied as a result of action by the commission or board vested with jurisdiction. First, in order to issue and serve a cease-and-desist order initially, the commission or board must investigate and prove that the respondent has violated the prohibitions of the Clayton Act. No provision of the Clayton Act, however, makes the commission or board's cease-and-desist order final in the absence of an appeal by the respondent for judicial review. At the present time, the Clayton Act contains no procedure by which the commission or board may secure civil penalties for violations of its orders.

"Second, before the commission or board may obtain a court ruling that commands obedience to its cease-and-desist order, it must again investigate and prove that the respondent has violated both the order and the Clayton Act. The jurisdiction of the court of appeals, under

Upon any future enforcement proceeding, the Commission and the Court of Appeals will have ready at hand interpretive tools—the employment of which we have previously sanctioned—for use in tailoring the order, in the setting of a specific asserted violation, so as to meet the legitimate needs of the case. They will be free to construe the order as designed strictly to cope with the threat of future violations identical with or like or related to the violations which Broch was found to have committed,[7] or as forbidding "no activities except those which if continued would directly aid in perpetuating the same old unlawful practices." *Federal Trade Comm'n* v. *Cement Institute*, 333 U. S. 683, 727. They need not— as we have already made clear—read the order as denying

the present provisions of Clayton Act section 11, cannot be invoked by the commission or board unless a violation of the cease-and-desist order is first shown.

"Third, enforcement of the court's order must be secured in a subsequent contempt proceeding, which requires proof that new activities of the respondent have violated the court's order. This entails a third hearing before the commission and a review thereof by the court of appeals.

"In contrast, the procedures that are contained in the Federal Trade Commission Act for enforcement of cease-and-desist orders issued thereunder are much simpler and more direct. A cease-and-desist order issued pursuant to section 5 of the Federal Trade Commission Act, as amended, becomes final upon the expiration of the time allowed for filing a petition for review, if no such petition is filed within that time." H. R. Rep. No. 580, 86th Cong., 1st Sess. 4. See also S. Rep. No. 83, 86th Cong., 1st Sess. 2–3.

[7] Cf. *Federal Trade Comm'n* v. *Morton Salt Co.*, 334 U. S. 37, 51–53; *Federal Trade Comm'n* v. *National Lead Co.*, 352 U. S. 419, 430–431. "In carrying out [its] function the Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity." *Federal Trade Comm'n* v. *Ruberoid Co.*, 343 U. S. 470, 473.

to Broch the benefit of statutory defenses or exceptions. *Federal Trade Comm'n* v. *Ruberoid Co., supra,* at 475–476; *Federal Trade Comm'n* v. *National Lead Co.,* 352 U. S. 419, 426.[8] Nor need the order be construed as prohibiting anything as clearly lawful as a uniform reduction in commissions.[9] And, we repeat, these various interpretive aids will have to be brought to bear by a Court of Appeals upon a particular practice of Broch, and will have to yield the announced result that such practice violates the order, before Broch can be subjected to penalties because of still a second repetition of the violation.

In this situation, and on this record, we hold that the attempt of the Court of Appeals to redress the asserted overbroadness by the inapt device of confining paragraph (2) to Canada's sales to Smucker was inappropriate and, indeed, any attempt to restrict the scope of the order would have been premature.

We do not wish to be understood, however, as holding that the generalized language of paragraph (2) would necessarily withstand scrutiny under the 1959 amendments.[10] The severity of possible penalties prescribed

[8] Broch complains of the order's omission of any reference to the statutory exception for brokerage "for services rendered in connection with the sale or purchase of goods . . . ." We made it clear in our prior opinion that the order need not be read as prohibiting transactions to which the statutory exception applies. 363 U. S., at 173, 177, n. 19. Nor need the order, when viewed in the context of Broch's violation, be read as prohibiting Broch from reducing commissions competitively to gain a particular buyer's account, if the competitive setting would otherwise have afforded a defense to a charge under § 2 (c).

[9] "Had respondent . . .. agreed to accept a 3% commission on all sales to all buyers there plainly would be no room for finding that the price reductions were violations of § 2 (c). Neither the legislative history nor the purposes of the Act would require such an absurd result, and neither the Commission nor the courts have ever suggested it." 363 U. S., at 176.

[10] See notes 5, 6, *supra.*

by the amendments for violations of orders which have become final underlines the necessity for fashioning orders which are, at the outset, sufficiently clear and precise to avoid raising serious questions as to their meaning and application.[11] See *Labor Board* v. *Express Pub. Co.,* 312 U. S. 426, 435–437; *Federal Trade Comm'n* v. *Cement Institute,* 333 U. S. 683, 726; *Federal Trade Comm'n* v. *Morton Salt Co.,* 334 U. S. 37, 54. Compare *New Haven R. Co.* v. *Interstate Commerce Comm'n,* 200 U. S. 361, 404; *Swift & Co.* v. *United States,* 196 U. S. 375, 400–401.

The judgment of the Court of Appeals is reversed and the case is remanded with direction to affirm the order of the Federal Trade Commission.

*It is so ordered.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE HARLAN join, dissenting.

On the Court's assumption that the Court of Appeals had power, *sua sponte,* to modify the decree, I would affirm. This Court reversed the judgment of the Court of Appeals on the prior appeal largely on the very narrow ground that petitioner's "reduction in brokerage was made to obtain this particular order and this order only . . . ,"

---

[11] The penalties under the 1959 amendments are as follows:

"Any person who violates any order issued by the commission or board under subsection (b) of this section after such order has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation . . . . Each separate violation of any such order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the commission or board each day of continuance of such failure or neglect shall be deemed a separate offense."

363 U. S. 166, 176, and therefore the Court of Appeals was justified in limiting the Commission's order accordingly.

When its attention is focused to the appropriateness of the scope of an order to restrain illegality, the Commission has shown responsible awareness of the difference in shaping its order to a situation like the one presented by this case, to wit: a specific, closely confined illegality as distinguished from a widespread illegal practice inimical to the public interest. See opinion of the Commission in *In re Colgate-Palmolive Co. and Ted Bates & Co.*, Docket No. 7736, December 29, 1961, CCH Trade Reg. Rep., ¶ 15,643, pp. 20,474, 20,485. So, too, has the United States Court of Appeals for the Second Circuit shown responsive awareness and appreciation of that distinctive difference. *Swanee Paper Corp.* v. *Federal Trade Comm'n*, 291 F. 2d 833, 837–838.