SWIFT & COMPANY, Petitioner,

v.

UNITED STATES of America and Orville L. Freeman, Secretary of Agriculture, Respondents.

No. 13751.

United States Court of Appeals Seventh Circuit.

April 22, 1963.

Arthur C. O'Meara, Arthur R. Curtis, Chicago, Ill., Thomas H. Long, Walter D. Turner, Chicago, Ill., for petitioner.

Neil Brooks, Asst. Gen. Counsel, U. S. Dept. of Agriculture, Washington, D. C., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Morton Hollander, Chief, Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., Lowell E. Miller, Robert E. Duncan, Attys., Dept. of Agriculture, Washington, D. C., for respondent.

Before CASTLE, KILEY, and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a petition to review and set aside an order of the Agriculture Department's Judicial Officer[1] requiring Swift & Company to cease and desist from certain selling and marketing practices in violation of §§ 202(a) and (b) of the Packers and Stockyards Act.[2] 7 U.S. C. §§ 192(a) and (b).

The issue before the Judicial Officer was whether Swift & Company had sold "picnic hams" to Kroger Company in Nashville, Tennessee, at prices substantially lower than prices charged by Swift to Kroger's competitors in the Nashville area. The administrative proceeding resulted in the cease and desist order at bar.[3]

The sale to Kroger involved about 117,-000 pounds of Old Hickory "smoked picnics," cured pork products, at 29¢ per pound to be delivered on order during Kroger's 75th Anniversary Sale April 23 through May 3, 1958. In addition, Kroger agreed to buy 250,000 pounds of other meat during that period, at prevailing prices. And during the same period Swift sold "picnics" of the same brand to various competitors of Kroger in the Nashville area at a price of from 9½¢ to 14¢ per pound higher than the price to Kroger. The Kroger stores sold the "picnics" at retail for the cost price of 29¢.

The order rests upon the conclusion that the facts established a violation of § 202(a) in Swift's *"unfair* and *unjustly* discriminatory practice or device;" and a violation of § 202(b) in Swift's *"undue* or *unreasonable* preference or advantage to Kroger and an *undue* or *unreasonable* prejudice or disadvantage to Kroger's competitors."[4] The Judicial Officer concluded that there was no evidence that Swift's discrimination was good faith meeting of competition and that there was no economic justification for the discrimination.

The question is whether the findings and conclusions of the Judicial Officer are supported by substantial evidence on the record as a whole, and whether the order of the Officer is authorized by law. 5 U.S.C. § 1009(e), Berigan v. United States, 257 F.2d 852, 855 (8th Cir., 1958).

---

1. The Judicial Officer acted for the Secretary of Agriculture. The Department proceeded pursuant to § 203, Packers and Stockyards Act, 7 U.S.C. § 193.

2. § 202, Packers and Stockyards Act, 7 U.S.C. § 192, provides, in pertinent part, as follows:
   "It shall be unlawful for any packer * * * to: (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in commerce; or (b) Make or give, in commerce, any undue or unreasonable preference or advantage to any particular person or locality in any respect whatsoever, or subject, in commerce, any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever; * * *."

The prohibitory provisions of § 202 were amended in 1958 (72 Stat. 1749), but the transactions in this case took place prior to the 1958 amendment.

3. The order is that Swift, its officers, agents and employees cease and desist, directly or indirectly "in connection with the offering for sale, sale, or distribution of smoked or cured pork and pork products in commerce, * * * from selling any such items to multiple-unit or group buyers at net prices substantially lower than the net price charged or offered to any other purchaser of items of like grade or quality where such purchasers are competing in the resale of such items: * * *."

4. The italics were used by the Judicial Officer.

The Judicial Officer decided that proof of injury to competition, as required by § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), was unnecessary to establish the violation charged. We need not decide whether that conclusion is correct. If there is substantial evidence of injury to competition,[5] the point is academic.

There is substantial evidence of that injury, as shown by these facts and inferences: Kroger's independent competitors closely followed weekly ads of Kroger and other large grocery chains and tried to meet the advertised prices. An independent refused to buy "picnics" from Swift at the higher prices because, had he done so, he would have been unable to compete with Kroger in the resale. The price to Kroger discouraged retail buying from the independents and "would" reduce their sales. The purpose of the anniversary sale was to keep "traffic" moving through the Kroger stores and to "obtain business" from other stores, and although the business of the independents was "normal" during the anniversary sale of Kroger, as Swift admits in its brief in this court, the Kroger stores had a "tremendous increase" in business during the same period. The special sale by Kroger was on the first weekend of the month at pay day time and the independents' gross would and should have been above the normal weeks or weekends. But it was not. None of the independents could meet Kroger's price of 29¢ per pound when their cost from Swift was 9½¢ to 14¢ more than it was to Kroger. There was damage to the good will of the independents.

■■ The evidence of the independents cannot be rejected as non-expert opinion. Bratt v. Western Air Lines, 155 F.2d 850, 166 A.L.R. 1061 (10th Cir., 1946), cert. denied, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635. The "opinion

rule" does not apply to the administrative process. § 7(c), Administrative Procedure Act, 5 U.S.C. § 1006(c), Davis, Administrative Law Text, Evidence, § 14.13 (1959 ed.). The question was not "whether the witness was qualified to testify but, rather, what weight was to be given to his testimony. And with that we are not concerned." Keller v. Federal Trade Commission, 132 F.2d 59, 61 (7th Cir., 1942).

■ Because of the Government's evidence, there is no merit in Swift's argument that the Judicial Officer inferred, from the price differential alone, that there was injury to competition. Furthermore, as the Court said in Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 46–47, 68 S.Ct. 822, 828–829, 92 L.Ed. 1196 (1948): "Here the Commission found what would appear to be obvious, that the competitive opportunities of certain merchants were injured when they had to pay respondent substantially more for their goods than their competitors had to pay." There was substantial evidence to support the findings of the Judicial Officer, Berigan v. United States, 257 F.2d 852 (8th Cir., 1958), Hyatt v. United States, 276 F.2d 308, 312 (10th Cir., 1960), and his conclusion that there was a violation of §§ 202 (a) and (b) of the Packers and Stockyards Act was not erroneous.

■ Swift contends its "single sale lasting only three days on a single item" was not a violation under a reasonable interpretation of the Act. In support of its contention it cites Muller & Co. v. Federal Trade Commission, 142 F.2d 511, 519 (6th Cir., 1944). There an entire course of conduct was at issue and what the court said about specific acts has no relevancy here. In this case we are dealing with an Act of Congress making it a violation to "(a) * * * *use any unfair,* unjustly discriminatory,

---

5. The Hearing Examiner concluded: "If, however, to violate section 202 of the act, price discrimination must carry with it evidential exposition of competitive injury, the record discloses affirmative proof of injury to at least five small independent stores and presumptive injury to many more by virtue of respondent's discriminatory price cut to Kroger."

or deceptive \* \* \* device \* \* \*; or (b) Make or give \* \* \* *any* undue or unreasonable preference or advantage to any particular person \* \* \* in *any respect whatsoever.*" (Emphasis added.) We think the broad language "any" and "in any respect whatsoever" covers the single sale of 117,000 pounds of "picnics" to Kroger during the period April 23 to May 3. Wilson & Co. v. Benson, 286 F.2d 891 (7th Cir., 1961). The fact that the independents here are small businessmen, Klor's v. Broadway-Hale Stores, Inc., 359 U.S. 207, 213, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), has no bearing on the antitrust principle which inspires the Act in question.[6]

We see no merit in the contention that the order should "include expressly all of the defenses permitted by the Robinson-Patman Act." The cease and desist order is based on Swift's unlawful conduct with Kroger and is directed against any repetition of it. The Judicial Officer may not exclude expressly or by implication defenses to which Swift is entitled under the Act. An omission to include them does not exclude them. The Judicial Officer need not anticipate defenses that may be available to Swift in the event charges are made against it in the future.

As to the geographical and product scope of the order, we, as this court in Wilson & Co. v. Benson, 286 F.2d 891 (7th Cir., 1961), might be "better pleased" if the order were more narrowly drawn. Swift & Co. v. Benson, 308 F.2d 849 (7th Cir., 1962). But, as in that case, we are reluctant to interfere with the exercise of the Secretary's action since the order has "a 'reasonable relation to the unlawful practices found to exist'." Federal Trade Commission v. National Lead Co., 352 U.S. 419, 429, 77 S.Ct. 502, 509, 1 L.Ed.2d 438 (1957). The order is directed at the unlawful conduct of which Swift has been found

guilty, and is tailored "to meet the legitimate needs of the case." Federal Trade Commission v. Henry Broch & Co., 368 U.S. 360, 366, 82 S.Ct. 431, 435, 7 L.Ed. 2d 353 (1962). We conclude that the order is authorized by law.

For the reasons given, the petition to set aside the order is denied.

---

6. "\* \* \* it is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy." 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741.