333 F.2d 654
 MARY CARTER PAINT CO., a corporation, John C. Miller and I.
G. Davis, Jr., as officers of said corporation,
and Robert Van Worp, Jr., Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 19982.
 United States Court of Appeals Fifth Circuit.
 June 19, 1964.
 
 David W. Peck, New York City, for petitioners.
 J. B. Truly, Asst. Gen. Counsel, Charles C. Moore, Jr. and James M. Henderson, Atty., Federal Trade Comm., Washington, D.C., for respondent.
 Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, district judge.
 HUTCHESON, Circuit Judge:
 
 
 1
 This case is before the court on a petition to review and set aside a Federal Trade Commission order directing petitioners to crease and desist from engaging in certain unfair and deceptive practices and unfair methods of competition in connection with the interstate sale of plant.
 
 
 2
 The Commission's complaint charged that petitioner, in connection with the interstate sale of paint, had published advertisements which falsely represented 'that the usual and customary retail price of each can * * * is the price designated in the advertisement; that this advertised price is a factory price; and that if one can * * * is purchased at the advertised price, a second can will be given 'free' * * *'. In their answer, petitioners admitted the publication of the advertisements, but denied the misrepresentations alleged.
 
 
 3
 The undisputed facts as developed at the hearings before a hearing examiner of the Commission are set out in the margin.[1]
 
 
 4
 After hearing the evidence, the hearing examiner issued his decision wherein he found that petitioners had not misrepresented that their advertised price was a factory price, but had misrepresented the usual and regular price of their paint and had falsely represented that a second can was given free with every can purchased. Accordingly, he issued an order to cease and desist, designed to prohibit the practices found to be violations of the Federal Trade Commission Act.
 
 
 5
 On review, the Commission accepted the examiner's holding that Mary Carter's advertising was not permissible because the 'free' second can of paint was not a gift or gratuity, though the Commission felt obliged to state in its decision that it did not thoroughly understand the hearing examiner's reasoning on this point, and in a detailed opinion[2] modified, and as modified adopted as its own, the initial decision and the order to cease and desist contained therein. Commissioner Elman filed a dissenting opinion.
 
 
 6
 It is the contention of petitioners: that the decision of the Commission is wholly unsupported by and not in accordance with the probative and substantial evidence and the law of the case; that on the one material issue of whether and how the advertising is misleading or deceptive there is no supporting finding; and that the decision of the Commission is arbitrary and capricious and not in accordance with law. Petitioners also contend that there were substantial errors in the exclusion of material evidence and that the order entered is too vague and imprecise to be meaningful, and that all of these are grounds for review and reversal by this court under the provisions of the Administrative Procedure Act, 5 U.S.C. 1006-1009.
 
 
 7
 As to the order[3] itself, it is petitioners' contention that it is no more than a generality of legal statement which lacks any precision of meaning adequate to satisfy the requirement of clarity and applicability which the Supreme Court has said is the essence of a Commission order. F.T.C. v. Henry Broch, Inc., 368 U.S. 360, 82 S.Ct. 431, 7 L.Ed.2d 353. For the reasons and upon the considerations hereafter stated, we agree.
 
 
 8
 The complaint and opinion of the Commission, Commissioner Elman dissenting, is that the second can is not 'free' because it is not a 'gratuity', that is the purchaser must buy one can to get the second can free, hence the cost of the second can is included in the price of the first can and the price paid is therefore the price of two cans rather than one can; and that it is misleading or deceptive to advertise that the second can is 'free'. The case, therefore, turns on and revolves entirely around Mary Carter's use of the word 'free' in its advertising. There is no question or issue as to the quality of Mary Carter paint or as to the double value which it gives the public. The claim of the Commission is, however, that there is something misleading or deceptive in Mary Carter's expressing and advertising the bargain given in the terms of every second can 'free'.
 
 
 9
 The petitioners insist: that the opinion of the Commission is a mere quibble and in addition it is contrary to its established and long time rulings; that in Matter of Walter J. Black, 50 F.T.C. 225 (1953) and Matter of Book-of-the-Month Club, 50 F.T.C. 778 (1953), the Commission held that just such a bargain as Mary Carter gives can be expressed and advertised in the terms of a second article 'free' with the purchase of one article; and that the Commission enunciated that rule after the most careful consideration and rejection of the argument which it now advances, that the second article could not be considered 'free' because acquisition of the second article required the purchase of an article and hence there was no gratuity in the giving of the second article. In short, the transaction is the same as the well-nigh universal one cent sale practice where the merchants advertise that if you buy one article you can get another of the same article for one cent.
 
 
 10
 The majority opinion of the Commission states that the facts in this case are distinguishable from the facts in the Black and the Book-of-the-Month cases. Petitioner, however, and we, as the reviewing court, are in the fortunate situation in this case that Commissioner Elman, speaking not as the scribes and pharisees and the bureaucrats do, but as one having authority, has clearly, vigorously and incontrovertibly pointed out in his dissenting opinion the fallacious and quibbling nature of the majority's effort to support its position and to distinguish the cited cases.
 
 
 11
 Further, Commissioner Elman rightly noted, as 'perhaps the most serious deficiency in the majority opinion', that 'nowhere does the Commission explain what was 'unfair or deceptive' about what Mary Carter did'; and finally Commissioner Elman found the order issued by the Commission so 'indefensibly vague' and 'puzzling' that he did not know how respondents could comply with it. It should be added that Commissioner Elman also aptly and devastatingly observed, 'As a result, uncertainty and confusion are being introduced, needlessly and unsettlingly, into an area of business activity where businessmen and the bar have long and correctly regarded the Commission's position as definite and clear'.
 
 
 12
 Contrary to the tone and tenor of most dissenting opinions, Commissioner Elman's opinion, instead of being a polemic directed at sustaining his own contrary view, is devoted to a careful, thoughtful and positive demonstration that the Commission, in reaching its conclusion, had devoted its efforts to tithing mint, anise and cummin, while neglecting and disregarding the weightier things of the law.
 
 
 13
 We find ourselves in agreement with Commissioner Elman's dissenting opinion: that the opinion of the Commission is completely erroneous; and that its order is lacking in the precision and definiteness which the statute requires of such an order as this. We reject, as Commissioner Elman does, the Commission's opinion: that Mary Carter's advertising is misleading because 'The second can of paint was not, and is not now free'; that it was not, and is not now given without cost to the retail purchaser since the purchaser paid the advertised price; and that this was, and is now, the usual and regular retail price at which two cans of Mary Carter paint were ordinarily sold.
 
 
 14
 In short, we agree with Commissioner Elman's demonstration that in sustaining the complaint in this case and holding that Mary Carter's advertising is misleading and deceptive in the respects alleged, it is clear that the Commission has departed from its established rules, on which Mary Carter had 'every right to rely', and has reverted to its discarded reasoning in the first Book-of-the-Month Club case. 'This', as Commissioner Elman observes, 'it has not done forthrightly', however, but by purporting to find that this case is 'distinguishable' from the Black cae, which it purports to still recognize as law. We agree with Commissioner Elman that the cases are 'indistinguishable' and the decision of the Commission to the contrary is unsupported in law.
 
 
 15
 The brief of petitioners has presented in a thorough-going and lawyer-like way petitioners' position. We are spared, however, the necessity of more thoroughly presenting their views and arguments by the fact that we find it sufficient to say that we adopt and approve the reasoning and the result in Commissioner Elman's dissenting opinion,[4] and particular this concluding statement from it:
 
 
 16
 'This brings me to what is perhaps the most serious deficiency in the majority opinion. The duty of the Commission in this case was to determine whether Mary Carter had violated Sec. 5 of the Federal Trade Commission Act by engaging in any 'unfair or deceptive acts or practices'. Yet nowhere does the Commission explain what was 'unfair or deceptive' about what Mary Carter did. The word 'deceptive' appears in the Commission's opinion on page 2 in a description of the allegations of the complaint and again on page 10 in the observation that a good motive cannot justify a deceptive practice. But we are never informed as to who is, or might be, misled by Mary Carter's 'Buy one and get one free' offer, or as to how that deception might be brought about.'
 
 
 17
 Finally, Commissioner Elman noted[5] that the Commission's order to cease and desist was 'indefensibly vague', particularly in the light of the Supreme Court's recent call for Commission orders 'sufficiently clear and precise to avoid raising serious questions as to their meaning and application'.
 
 
 18
 It will be noted that throughout the briefs and arguments of the parties as to the error of the Commission, there is no claim that the Commission's error is in its findings of fact. Indeed, there could not be because the facts as to what the appellants did were undisputed. There was no evidence to the contrary of what they proved that they did, so that we are not confronted here with any question of the presumption attending the Commission's findings of fact. The evidence presented no conflict which would form the basis of such a finding, and the sole question presented here is a question of law for the court, whether the Commission's conclusions from the undisputed facts are legally supportable.
 
 
 19
 In his annual message to Congress, January, 1936, the President, referring to the establishment of administrative bodies, declared:
 
 
 20
 '* * * in thirty-four months we have built up new instruments of public power. In the hands of a people's Government this power is wholesome and proper. But in the hands of political puppets of an economic autocracy such power would provide shackles for the liberties of the people.'[6]
 
 
 21
 Some ten years later, the President transmitted to Congress, with his full endorsement and the statement that it was a great document of permanent importance, the report of his Committee on Administrative Management, which, because of the growth and intensification of administrative legislation of private enterprise and other phases of American life, he had created, appointing to it wise and earnest men. In transmitting the report he took occasion to say that the practice of creating administrative agencies, which perform administrative work in addition to judicial work, threatens to develop a fourth branch of the government for which there is no sanction in the Constitution.[7]
 
 To this the Committee added:
 
 22
 'There is a conflict of principle involved in their make-up and functions. * * * They are vested with duties of administration * * * and at the same time they are given important judicial work * * *. The evils resulting from this confusion of principles are insidious and far reaching. * * * Pressures and influences properly enough directed toward officers responsible for formulating and administrating policies constitute an unwholesome atmosphere in which to adjudicate private rights.'
 
 
 23
 In June, 1946, the Congress enacted, and on June 11, the President approved the Administrative Procedure Act,[8] and thus there had at last come about an Administro-Judicial Process established by legislative sanction and judicial approval.[9]
 
 
 24
 Because, as we have held above, the Commission's decision and order are not in accordance with law, its decision and order are reversed and the Commission is directed to enter an order dismissing the complaint.
 
 
 25
 JOHN R. BROWN, Circuit Judge (concurring specially):
 
 
 26
 I am in full agreement with the Court's result and with much of its opinion written by my distinguished Brother Hutcheson. With no purpose to prepare a polemic or title 'mint, anise and cummin,' I would speak-- 'not as the scribes and Pharisees and the bureaucrats do,' cf. Thompson v. United States, 5 Cir., 1964, 332 F.2d 657 (dissenting opinion)-- but as a special concurring Judge should, a few brief words to indicate the views which lead me to decision.
 
 
 27
 At the outset I am not troubled about the so-called undemonstrated deception. One thing clear is that Mary Carter's paint is not really sold at any of the advertised prices. Thus, the price of $6.98 for the first gallon, the second one 'free' is not the price at all for one gallon. Nor is it $3.49 (one-half of $6.98 for two gallons.) Rather, it is $4.50, represented by the cost of two-one quarts ($2.25), getting for each, another 'free' quart. For those who read and buy paint while running, I would suppose that Government might deem it appropriate to demand that at least one of the advertised prices be the correct one.
 
 
 28
 But at issue here is something more fundamental than house paint, bargains, or the American habit of self-delusion on 'free' articles.
 
 
 29
 Our complex society now demands administrative agencies. The variety of problems dealt with make absolute consistency, perfect symmetry, impossible. And the law reflects its good sense by not exacting it. But law does not permit an agency to grant to one person the right to do that which it denies to another similarly situated. There may not be a rule for Monday, another for Tuesday, a rule for general application, but denied outright in a specific case.
 
 
 30
 That is what the Commission has done here. The precise action done here is permitted by Black, 50 F.T.C. 225 (1953). And even more unequivocal is the 'Free Rule' (50 F.T.C. 235-236) patterned on it, but which has the positiveness of a rule, not a judicial-like opinion expounding a principle. These offers meet fully, honestly, and in good faith the requirement of Paragraph (2) found in each. Although Mary Carter's offer of the 'free paint' is contingent on the purchase of a quart or a gallon, Mary Carter does not either (1) increase 'the ordinary and usual price' or (2) reduce 'the qualify'; or (3) reduce 'the quantity or size of the article of merchandise' which the customer is required to purchase.
 
 
 31
 Nevertheless, the Commission now holds that Mary Carter may not do what the Commission's two pronouncements clearly permit.
 
 
 32
 I am not arguing for Black in perpetuity. It may be bad or undesirable. The 'Free Rule,' emphatic as it is, may be worse. If so, the Commission should so declare. But so long as that is the rule, the Commission may not nullify it by individual decision while ostensibly holding it out as the standard for others.
 
 
 33
 With Black and the 'Free Rule' not yet repudiated, Mary Carter is the victim of individualized discrimination. So long as Black stands, so long as the 'Free Rule' stands, paragraph (2) must be fairly applied.
 
 
 34
 As I did with the Interstate Commerce Commission in Yellow Transit Freight Lines, Inc. v. United States, N.D.Tex., 1963, (3-Judge), 221 F.Supp. 465, 469-471 (concurring opinion), I think the Federal Trade Commission has to make up its mind.
 
 
 
 [1]
 As pertinent, these are the facts:
 Mary Carter Paint Co. is engaged in the business of manufacturing, selling, and distributing paint under the trade name of 'Mary Carter'. At the time of the hearings, the company distributed its paints in more than 27 states of the United States through over 500 retail outlets, including both company stores and franchise dealers. Although still a small company in the paint industry (its share of national paint sales is under one percent), the company has increased its sales from one million dollars in 1955 to twelve million dollars in 1960, a growth achieved by increasing the number of retail outlets and building the repeat business of satisfied customers.
 The basic business policy of Mary Carter, consistently followed over the past ten years, has been to manufacture and sell paint of high quality at a net cost to the consumer of half the amount he would pay for paint of comparable quality manufactured by leading national brand companies. This policy of giving 'double value' is carried out in a merchandising practice of pricing a can of Mary Carter paint at a price comparable to the price of national brand paints of comparable quality, and advertising and giving the purchaser a second can free. Thus, typical Mary Carter advertising in newspapers, magazines, radio, television, store signs, lithographed can tops, and truck sides, states: 'Buy One, Get One Free'; 'Every Second Can Free of Extra Cost'; 'Every Second Can free'.
 Mary Carter's merchandising policy and the reason for it are specifically stated in advertisements which explain that Mary Carter paint is 'quality priced' and that the company will not 'second rate' its paint with a low-price tag-- a point of particular importance in a market in which the leading paint manufacturers have combined in a sustained publicity campaign to inculcate a public psychology equating quality with price. (Evidence on this latter point was excluded below, and the petitioner here urges that such exclusion was erroneous.)
 The quality of Mary Carter paint is not quested. Indeed, at the hearing, Commission counsel contended that the quality of Mary Carter paint was not an issue, and the hearing examiner ruled that the evidence offered on the subject by Mary Carter was immaterial. The Commission has upheld that ruling. The evidence was taken for reporting, however, and both the evidence and the examiner's report of the evidence establish that Mary Carter paints are as good as, or superior to, paints marketed under leading national brand names at prices comparable to the single can price of Mary Carter paints. (The exclusion of this evidence constitutes one of petitioners' exceptions to the decision below.)
 In accordance with Mary Carter's consistent merchandising practice, the single can price of its paint is the advertised price for a single can and the only price at which Mary Carter paint can be purchased, the purchaser being entitled to receive without extra cost a second can of the same kind of paint or of any other similarly or lower priced Mary Carter paint. Naturally, the purchaser will usually take the second can, but this is optional with him; at times he takes only the single can, and the price paid is the same single can price.
 There was no evidence, at the hearing, of consumer complaints or of any deception of Mary Carter cusomters. The extent of consumer satisfaction with Mary Carter paints and with the value offered and given is indicated, however, by the company's increased sales and, particularly, its repeat-customer sales.
 
 
 [2]
 In the Matter of Mary Carter Paint Co., Inc. et al. FTC (628-62)
 
 
 [3]
 The order entered would prohibit Mary Carter from representing 'directly or by implication':
 '(a) That any amount is (its) customary and usual retail price of any merchandise when said amount is in excess of the price at which such merchandise is customarily and usually sold by (it) at retail in the recent and regular course of business;
 '(b) That any article of merchandise is being given free or as a gift or without cost or charge, when such is not the fact';
 
 
 [4]
 In the Matter of Mary Carter Paint Co. Inc. etc. FTC at page
 
 
 [5]
 'The Commission's order prohibits respondents from representing:
 "(a) That any amount is respondents' customary and usual retail price of any merchandise when said amount is in excess of the price at which such merchandise is customarily and usually sold by respondents at retail in the recent and regular course of business'
 "(b) That any article or merchandise is being given free or as a gift, or without cost or charge, when such is not the fact. * * *'
 'A reading of the order invites this question: What must respondents stop doing that they are now doing? Paragraph '(a)' declares that they may not call any amount their usual and customary price if it is in excess of their usual and customary price in the recent, regular course of business. Obviously, this has as little to do with the case as Guide V of the Guides Against Deceptive Pricing. Respondents have never sought to represent their 'recent' prices; they advertise only their current prices. As it happens, however, their current prices are the same as their recent prices. Whether regarded as a one-can or two-can price, respondents' advertised price of $2.25 per quart, for example, is their 'usual and customary retail price' NOW, and it is not in excess of $2.25 per quart, which is 'the price at which such merchandise is customarily and usually sold by respondents at retail in the recent and regular course of business'. Does this mean that paragraph '(a)' has no effect at all on respondents' advertising practice? Surely not, or the Commission would not issue it. But what effect does it really have, and how are respondents to comply with it? I confess I do not know.
 'Paragraph '(b)' is almost as puzzling. Presumably, it is intended to require respondents to cease advertising 'Buy 1 and get 1 Free'. But this cannot be deducted from anything to be found in the terms of the order. As the Commission's own troubles with the problem show, the definition of 'free' merchandise is no easy matter. Yet respondents are ordered, on pain of heavy penalties, to cease and desist from describing merchandise as free 'when such is not the fact.' Surely this provision, like paragraph '(a)', is indefensibly vague, particularly in light of the Supreme Court's recent call for Commission orders 'sufficiently clear and precise to avoid raising serious questions as to their meaning and application.' Federal Trade Commission v. Henry Broch & Co., 368 U.S. 360, 368, (82 S.Ct. 431, 7 L.Ed.2d 353) (1962).'
 
 
 [6]
 'The Public Papers and Addresses of Franklin D. Roosevelt,' Vol. 5, p. 16
 
 
 [7]
 Cf. 'All three existing arms of government being found inadequate to achieve the social purpose aimed at, a new type of body called a Commission, a government in miniature, is set up.' John Willis, University of Toronto Law School, Vol. 4, p. 60, Administrative Law, Selected Essays on Constitutional Law, Foundation Press, 1938
 
 
 [8]
 'An act to improve the administration of justice by prescribing fair administrative procedure.' Chap. 324, Public Law 404, Laws of the 79th Congress, 2nd Session, 1946
 
 
 [9]
 'An administro-judicial process, beginning with administrative adjudication of the facts and ending with a judicial adjudication of the law, both as completely aspects of one adjudicative process as are the adjudication of the facts by trial judge or jury and the adjudication of the law on appeal.' Judging as Administration, Administration as Judging, Texas Law Review, Vol. 21, Nov., 1942
 'Under such statutes, this court does not function as a tribunal, exterior to the statutory administrative scheme, whose jurisdiction is invoked on constitutional grounds, to protect the applicant against the failure of the statute to provide due process. It functions as the tribunal of last resort, set up in the statute itself, for the correction of errors of law committed, and not corrected, in the course of the administrative procedure.' Leebern v. United States, 5 Cir., 124 F.2d 505, 507. Cf. United States v. Morgan, 307 U.S. 180 at p. 191, 59 S.Ct. 795, 8o L.Ed. 1211.