400 F.2d 930
 CONSUMERS PRODUCTS OF AMERICA, INC., a corporation, Eastern Guild, Inc., a corporation and Jack Weinstock, Nat Loesberg, Jack Gerstel and Louis Tafler, individually, and as officers of the said corporations, Petitioners,
v.
The FEDERAL TRADE COMMISSION and the United States of America, Respondents.
 No. 16956.
 United States Court of Appeals Third Circuit.
 Argued June 4, 1968.
 Decided September 12, 1968.
 
 Theodore R. Mann, Goodis, Greenfield, Narin & Mann, Philadelphia, Pa. (James M. Carter, Philadelphia, Pa., on the brief), for petitioners.
 Charles C. Moore, Jr., Federal Trade Commission, Washington, D. C. (James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Federal Trade Commission, on the brief), for repondents.
 Before HASTIE, Chief Judge, and STALEY and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 STALEY, Circuit Judge.
 
 
 1
 This case is before the court upon a petition to review a cease and desist order of the Federal Trade Commission. The order was issued at the conclusion of an administrative proceeding held pursuant to a complaint charging petitioners, Consumers Products of America, Inc., Eastern Guild, Inc., Keystone Guild, Inc., and four individuals, Nat Loesberg, Jack Weinstock, Jack Gerstel, and Louis Tafler, with violating § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, by engaging in unfair and deceptive acts and practices and unfair methods of competition in connection with the interstate sale of encyclopedias.
 
 
 2
 Aside from its basic finding that petitioners were engaged in bait-and-switch advertising,[1] the Commission also found that advertisements of petitioners misled and falsely represented: that an encyclopedia will be delivered to prospective purchasers for a five-day free examination without any further condition, obligation or requirement; that the offer in the advertisements is limited to and expires within ten days; that a dictionary is "free" and is delivered to and may be retained by all prospective purchasers without charge, condition or obligation other than as set forth in the advertisement; and that through use of the trade name "Educational Foundation" petitioners operate a non-profit organization engaged in educational work. Paragraphs 4, 5, 6, and 8 of the Commission's order specifically enjoin petitioners from continuing the above-mentioned misrepresentations,[2] and with the exception of a non-meritorious challenge to paragraph 8,[3] petitioners do not object to this portion of the order. What they do vigorously oppose, however, is paragraph 1 of the order requiring them to forthwith cease and desist from:
 
 
 3
 "Using, in any manner, a sales plan, scheme or device wherein false, misleading or deceptive statements or rep-representations are made in order to obtain leads or prospects for the sale of merchandise or services."
 
 
 4
 It is urged by petitioners that this paragraph is too broad and too generalized because the only false, misleading or deceptive statements found by the Commission to have been made to obtain leads or prospects are those which are specifically covered by paragraphs 4, 5, 6, and 8 of the order. Thus, it is argued, if paragraph 1 is intended to refer to those particular statements, it is mere surplusage and therefore unnecessary, but if it is intended to cover something broader than that, it is improper and potentially may subject petitioners to contempt citations without benefit of the kind of administrative hearing to which they are entitled under the Act.
 
 
 5
 The Supreme Court of the United States has held that when the breadth of the Commission's order is attacked, the question on review is whether the Commission chose a remedy "reasonably related" to the violations which it found. See, e. g., F. T. C. v. Ruberoid Co., 343 U.S. 470, 473, 72 S.Ct. 800, 96 L.Ed. 1081 (1952); Jacob Siegal Co. v. F. T. C., 327 U.S. 608, 611-613, 66 S.Ct. 758, 90 L.Ed. 888 (1946). When considering this question, it must be kept in mind that Congress has placed the responsibility for fashioning orders upon the Commission, F. T. C. v. National Lead Co., 352 U.S. 419, 429, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957); F. T. C. v. Cement Institute, 333 U.S. 683, 726, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), and this responsibility necessarily includes the prevention of illegal future practices. As stated by the Court in F. T. C. v. Ruberoid Co., supra at 343 U.S. 473, 72 S.Ct. 803:
 
 
 6
 "* * * In carrying out this function the Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity. * * *"
 
 
 7
 An example of the latitude permitted the Commission in fashioning cease and desist orders, appears in the case of F. T. C. v. Henry Broch & Co., 368 U.S. 360, 82 S.Ct. 431, 7 L.Ed.2d 353 (1962). There the Commission found that Broch, a broker selling food products for many seller principals, had violated § 2(c) of the Clayton Act by reducing the commission that Canada Foods, Ltd., a processor of apple concentrate, ordinarily paid him, in order to make possible Canada Foods' acceptance of an offer from J. M. Smucker Co. to buy an unusually large quantity of apple concentrate at less than Canada Foods' established price. Paragraph 1 of the Commission's order prohibited Broch from repeating his illegal practice in connection with sales for Canada Foods, or for "any other seller principal," to Smucker, or "to any other buyer." Broch argued that this paragraph was too broad in its application to sales from all seller principals to all buyers because the order was based only upon findings limited to an asserted illegal payment from Canada Foods to Smucker. The Court, however, saw no merit in this argument, stating:
 
 
 8
 "* * * The Commission has a wide discretion to formulate a remedy adequate to prevent Broch's repetition of the violation he was found to have committed. See Jacob Siegel Co. v. Federal Trade Comm., 327 U.S. 608, 611-612, 66 S.Ct. 758, 759-760, 90 L. Ed. 888. We cannot say that the Commission exceeded its discretion in banning repetitions of Broch's violation in connection with transactions involving any seller and buyer, rather than simply forbidding recurrence of the transgression in sales between Canada and Smucker. * * *" 368 U.S. at 364, 82 S.Ct. at 433.
 
 
 9
 We think the Commission's discretion in cases involving false, deceptive and misleading advertising is at least as wide as that permitted in situations concerning illegal commission reductions. See F. T. C. v. Colgate-Palmolive Co., 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965). For, in our judgment, the well-being of innumerable members of our society has been, and must continue to be, protected by vigorous, though judicious, exercise of the Commission's expertise in evaluating the impact and meaning of sophisticated advertisements and their capacity to deceive or mislead. Cf. Doherty, Clifford, Steers & Shenfield, Inc. v. F. T. C., 392 F.2d 921 (C.A. 6, 1968); Erickson v. F. T. C., 272 F.2d 318 (C.A. 7, 1959), cert. denied, 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1960). In Erickson v. F. T. C., supra, the Court of Appeals for the Seventh Circuit was presented with a problem very similar to the one before us. There the Commission found that petitioner falsely represented and advertised that he could, without qualification, through the use of his preparations and method of treatment cause, among other things, new hair to grow on hairless heads. The court upheld the Commission's findings, but the petitioner argued that the facts as found would not support the Commission's order prohibiting the advertising "of any other preparations for use in treatment of hair and scalp conditions." The Court rejected this contention, holding that the above-quoted portion of the order related to the false representations contained in petitioner's advertising, and agreed with the Government's claim that "`[u]nless the Commission's order is broad enough to cover all preparations petitioner need only change the formula of his present preparations and continue to engage in the same false and deceptive practices condemned by the Commission.'" 272 F.2d at 322.
 
 
 10
 We think that this reasoning applies with equal force to the order in the instant case, and that paragraph 1 of the order does indeed have a "reasonable relationship" to the unlawful practices found to exist by the Commission. Were it not for this paragraph, petitioners could feel free to merely "change the formula" of their false, misleading and deceptive statements, and continue to deceive the public as they had before. Under the circumstances, we do not think that it is asking too much of petitioners to require them to simply tell the truth in their advertisements and oral representations.[4] As stated by Mr. Justice Clark in F. T. C. v. National Lead Co., 352 U.S. 419, at 431, 77 S.Ct. 502, at 510, 1 L.Ed.2d 438, "[petitioners] must remember that those caught violating the Act must expect some fencing in."
 
 
 11
 Petitioners next object to the wording of paragraph 10 of the Commission's order requiring them to obtain from present and future salesmen an agreement "to abide by the requirements of said order and to refrain from engaging in any of the acts or practices prohibited by said order; and for failure so to do, agreeing to dismissal or to withholding of commissions, salaries and other remunerations."
 
 
 12
 The Commission, in its supplemental brief filed after oral argument, has informed the court that it would agree to a modification of paragraph 10 which would require petitioners to merely:
 
 
 13
 "* * * deliver a copy of this order to cease and desist to all present and future salesmen or other persons engaged in the sale of [petitioners'] products and * * * secure from each salesman or other person a signed statement acknowledging receipt of said order."
 
 
 14
 In light of this development, it is unnecessary for us to take up the objections lodged by petitioners against the initial paragraph 10. We think that the modified paragraph effectively accomplishes the Commission's main purpose of assuring that petitioners' salesmen are made aware of the terms of the order, while at the same time, it avoids the suspicion of possibly impinging upon the legal rights of petitioners and their salesmen. The modification, therefore, is approved.
 
 
 15
 We have carefully considered petitioners' remaining contentions, but we deem them all to be so lacking in merit that further discussion is unwarranted. Accordingly, the Commission's order, as modified will be enforced.
 
 
 
 Notes:
 
 
 [1]
 The evidence shows that petitioners' advertisements of World Wide Encyclopedia (a set purchased by petitioners for about $4.00 and advertised and sold in all cases for $9.95), were made for the purpose of obtaining the names and addresses of people who were interested in the purchase of an encyclopedia principally for the use of school age children. When the prospective buyer filled out the coupon and sent it to petitioners' place of business, the encyclopedia was not mailed out, instead, a salesman called upon the prospective customer, demonstrated at the most one copy of the World Wide Encyclopedia, and quickly introduced the purchaser to the more expensive New Standard Encyclopedia (a set which was not advertised and which was purchased by petitioners for $25 and sold at prices ranging from $129 to $159). The salesman then exerted every possible effort to sell the New Standard Encyclopedia
 In the words of the hearing examiner: "This is nothing more than an age old bait and switch operation with the advertisement of the World Wide Encyclopedia being the bait to get the prospective purchaser's name and address and thereafter switch him to the New Standard Encyclopedia."
 
 
 [2]
 These paragraphs require petitioners to cease and desist from:
 "4. Representing, directly or indirectly, that said merchandise will be delivered to prospective purchasers for a five-day free examination or for any other period of time without clearly and conspicuously revealing all of the conditions, obligations or requirements, pertaining to said offer.
 "5. Representing, directly or indirectly, that any merchandise is "free" or is delivered to or may be retained by purchasers or prospective purchasers without clearly and conspicuously revealing all of the terms, conditions or obligations necessary to the receipt and retention of said merchandise.
 "6. Representing, directly or indirectly, that any offer is limited as to time, provided, however, that it shall be a defense in any enforcement proceeding instituted hereunder for [petitioners] to establish that such time restriction or limitation was actually imposed and in good faith adhered to by [petitioners].
 * * * * *
 "8. Using the trade name `Educational Foundation' in connection with [petitioners'] enterprises or representing, in any other manner, that [petitioners] operate any nonprofit organization engaged in educational work."
 
 
 [3]
 Petitioners disagree with the Commission's finding that use of the term "Educational Foundation" has a tendency and capacity to mislead the public. The Commission fully agreed with the hearing examiner's conclusion that petitioners' use of this term "clearly imports that the [petitioners] are engaged in some sort of non-profit operation" when they are, in fact, in business strictly for profit. We think there is a basis for the Commission's finding in this regard, and therefore it will not be disturbed. Cf. F. T. C. v. Mary Carter Paint Co., 382 U.S. 46, 48-49, 86 S.Ct. 219, 15 L.Ed.2d 128 (1965); Carter Products, Inc. v. F. T. C., 323 F.2d 523, 528 (C.A.5, 1963); Perloff v. F. T. C., 150 F.2d 757, 759 (C.A.3, 1945)
 
 
 [4]
 As for petitioners' fear of a possible contempt proceeding, the Supreme Court pointed to the solution in F. T. C. v. Colgate-Palmolive Co., 380 U.S. 374, 394, 85 S.Ct. 1035, 1047, 13 L.Ed.2d 904 (1965), noting:
 "* * * If, however, a situation arises in which respondents are sincerely unable to determine whether a proposed course of action would violate the present order, they can, by complying with the Commission's rules, oblige the Commission to give them definitive advice as to whether their proposed action, if pursued, would constitute compliance with the order."
 If petitioners fail to avail themselves of this procedure, and the Commission suspects a violation of paragraph 1 of the order, petitioners will have ample opportunity to dispute the applicability of the order's prohibition within the context of a given factual situation. See Jaffe, The Judicial Enforcement of Administrative Orders, 76 Harv.L.Rev. 865 (1963).